IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM BOYD, | : |
| | : |
|    Plaintiff, | : |
| | : |
|   v. | : Civ. Action No. 07-376-JJF |
| | : |
| WILMINGTON TRUST CO., | : |
| | : |
|    Defendant. | : |

William Boyd, Newark, Delaware.  Pro se Plaintiff.

Barry M. Willoughby and Pilar Gabrielle Kraman, Esquires, Young, Conaway, Stargatt & Taylor, Wilmington, Delaware.  Attorneys for Defendant.

**OPINION**

June 24, 2009
Wilmington, Delaware

*Joseph J. Farnan Jr.*
**Farnan, District Judge**

Plaintiff William Boyd ("Plaintiff") filed this Complaint on June 12, 2007.  (D.I. 2.)  He proceeds pro se and has been granted leave to proceed in forma pauperis.  (D.I. 4.)  Presently before the Court are several pending Motions including Plaintiff's Motions to Compel, Defendant Wilmington Trust Co.'s ("Defendant") Motion For Summary Judgment, and Plaintiff's Motion For Reconsideration And To Amend, Responses and Replies.  (D.I. 31, 32, 33, 36, 43, 46.)  For the reasons set forth below, the Court will grant Defendant's Motion For Summary Judgment and will deny the remaining Motions.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Boyd filed this action on May 2, 2007.  (D.I. 2.)  The Complaint alleges as follows:  Defendant discriminated against Plaintiff on June 13, 2006, when it allowed John Boyd ("J. Boyd"), Plaintiff's brother, to open an account for B&R ("B&R")[1] of which Plaintiff was unaware, but for which he had liability and responsibility.  (Id.)  J. Boyd deposited checks into the B&R account and sold B&R for four million dollars.  Defendant closed the account without telling Plaintiff.  J. Boyd deposited checks made out to Plaintiff's company, Allstaff, Inc. ("Allstaff"),

[1]B&R is referred to by the parties as both B&R, Inc. and B&R Employment, Inc.  The Court will refer to the entity(ies) as "B&R".

2

into J. Boyd's account. Plaintiff voiced his suspicions to Defendant, but was told it could not do anything. The Complaint does not indicate under which statute Plaintiff proceeds.

Plaintiff testified that between 1994 and 1997, he owned B&R, Inc., a temporary employment agency, and had opened a checking account for the company.[2] (D.I. 44, ex. 1 at 39, 65.) J. Boyd did not have check signing authority for B&R. (D.I. 44, ex. 1 at 38.) The bank account names the company as B&R Employment. (Id. at 65.) Defendant could find no records for an entity named B&R, Inc. (D.I. 36, answer 1.) Plaintiff testified that B&R, Inc. and B&R Employment are the same company. (D.I. 44, ex. at 65.) The testimony of J. Boyd is not clear, but seems to indicate that B&R Employment and B&R, Inc. are two separate companies. (D.I. 44, ex. 3 at 10.)

Bank records for B&R Employment provide the same address as that of its current registered agent, J. Boyd. (D.I. 44, ex. 1 at 66; D.I. 45. ex. 3.) Plaintiff testified that the address belongs to J. Boyd and that he must have changed the address

---

[2]The Complaint alleges that Defendant allowed J. Boyd to open a checking account for B&R, but Plaintiff recanted the allegation during his deposition. (D.I. 44, ex. 1 at 39-40.)

since the company started out at 118 South Maryland Avenue.[3]
(D.I. 44, ex. 1 at 66.)

On January 1, 1997, Plaintiff, who owned one hundred percent of its outstanding shares, sold all the stock in B&R Employment, Inc. to J. Boyd. (D.I. 44, ex. 1, at 35; ex. 2.) The sale included Plaintiff's clients. (D.I. 44, ex. 1 at 35.) Plaintiff testified that when he sold B&R to his brother, he thought that was the end of B&R. (D.I. 44, ex. 1 at 35.) After J. Boyd purchased B&R, Plaintiff had no further responsibilities with the company and was not employed by it. (D.I. 47, ex. 4 at 12.)

J. Boyd explained that when he purchased B&R Employment, he also owned Action Employment and B&R, Inc. and he was selling the companies. (D.I. 44, ex. 3 at 10.) B&R Employment acquired all the debt, B&R, Inc. had all the assets, and J. Boyd rolled the companies into Stratus Services and went onto the small-cap NASDAQ. (D.I. 44, ex. 3 at 10; D.I. 47, ex. 4 at 12.) This occurred in 1997. Plaintiff was aware that the sale occurred and thought that J. Boyd was buying Plaintiff's clients, turning them into J. Boyd's clients, and selling the company to Stratus. (D.I. 44, ex. 1 at 43.)

---

[3]Current information from the Delaware Division of Corporations indicates that B&R Employment, Inc. was incorporated on August 16, 1995, and that the registered agent is John Boyd, 207 Louis Lane, Hockessin, DE. See www.sos-res.state.de.us/tin/controller. Documentation provided by Plaintiff, dated October 19, 2005, states that the registered agent is William Boyd, 118 S. Maryland Ave., Suite B, Wilmington, DE. (D.I. 40, ex. M.)

J. Boyd never opened a bank account for B&R, and did not know if he changed the signature card at the bank.  (D.I. 44, ex. 1, at 35;  ex. 3 at 10.)  Apparently, the account was left open after the sale, but at some point in time it was "shut down."  (D.I. 44, ex. 1 at 40, 42.)  Plaintiff did not receive any bank statements related to B&R between 1997 and 2005.  (Id. at 42-43.)  B&R Employment, Inc. was dissolved as a corporation on October 29, 2005.  (D.I. 47, ex. 2.)  The dissolution states that its President is J. Boyd.  (Id.)

In 2003 or 2004, J. Boyd worked for Plaintiff's company, Allstaff, a temporary agency.[4]  According to J. Boyd, he entered into an oral agreement with Plaintiff to purchase Allstaff, but after J. Boyd built up the business, Plaintiff reneged on the agreement.  (D.I. 47, ex. 4 at 16-17, 23.)  During the time that J. Boyd worked for Allstaff, Plaintiff saw some documents that caused him to ask J. Boyd "what [was] going on with B&R," but J. Boyd did not give him a "straight answer."  (D.I. 44, ex. 1 at 43, 45.)  Thereafter, Plaintiff conducted an investigation regarding B&R and Allstaff, spoke to his accountant, and made inquiries at the bank.  (Id. at 44-45.)  According to Plaintiff, J. Boyd solicited Plaintiff's Allstaff clients, and told them that if payment was made within a week, their would either

_____

[4]Between October 2006 and October 2008, Plaintiff started the Marquis Company, a temporary employment agent, but it was not productive.  Basically all he did was obtain a federal ID number.  (D.I. 47, ex. 3 at 5-6.)

5

receive a reduced price or the clients would pay J. Boyd
directly.  (Id. at 45)  Plaintiff believes that J. Boyd was
depositing Allstaff checks into the B&R account.  (Id. at 63.)

During his deposition Plaintiff testified that although the
Complaint alleges that Defendant violated his civil rights, and
he felt that he was violated, he did not know what is meant by
"civil rights" and that the "main big picture is antitrust."[5]
(D.I. 44, ex. 1 at 30-31.)  Plaintiff testified that his claim
against Defendant is an antitrust claim based upon the sale of
B&R executed through bank fraud, embezzlement, and extortion.
(D.I. 44, ex. 1 at 64-65.)  Plaintiff listed statutes under
Titles 12, 15, and 18 of the United States Code on the civil
cover sheet because they included violations of antitrust acts
and had "clips of bank fraud, embezzlement, [and] extortion."
(Id. at 31.)  Plaintiff testified that Defendant is in the
"conspirators circle" with Jack Boyd, Krista Garrettson, Robin
Rizzo, Harry Morris, TemPay, Ted Nannas, and Insurance and
Financial Services and he believes that they devised a plan to
prevent temporary employment agencies from operating in

_____

[5]The Complaint alleges that discriminatory acts occurred on
June 13, 2006, because that is the day Plaintiff obtained the
forms for filing his Complaint.  (D.I. 44, ex. 1 at 32.)  The
date was not picked randomly, but it was "more towards the end of
when [he] discovered and put everything together" that had
happened to him throughout the years with regard to his antitrust
case.  (Id. at 33.)

6

Delaware.⁶  (Id. at 106-107.)  He also believes that Defendant
has something to do with Allstaff and B&R's ability to compete in
a horizontal market.⁷  (Id.)

Plaintiff testified that the antitrust action started prior
to the sale of B&R to J. Boyd.  (D.I. 44, ex. 1 at 34.)  He
testified that Defendant's involvement in the claim began when J.
Boyd began bringing B&R checks to Defendant and cashing them.
(Id. at 34.)  Plaintiff believes that there "had to be some kind
of agreement that allowed J. Boyd to sell assets in Plaintiff's
company's name" and to turn four million dollars (i.e., the
purchase price of J. Boyd's company) into his with no financial
responsibility for taxes or the money (D.I. 44, ex. 1 at 34-38.)

At no time did Plaintiff move to amend the Complaint.  The
discovery deadline expired on February 27, 2009 and the case
dispositive motion deadline expired on March 31, 2009.  (D.I. 14,
29.)  On March 31, 2009, Defendant filed a Motion For Summary
Judgment on the grounds that Plaintiff lacks standing to seek
relief, and, as a matter of law, cannot prove violations of

---

⁶Plaintiff filed similar Complaints against most of these
individuals, all of which have been dismissed.  See Civ. Nos. 07-
377-JJF, 07-378-JJF, 07-578-JJF, 07-580-JJF, 07-581-JJF, and 07-
583-JJF.

⁷Plaintiff made similar allegations in his responses to
Defendant's Answer (titled "Response To Defendants Motion To
Dismiss").  Therein he states that Defendant violated antitrust
laws under the Sherman Act, § 1 and § 2, and that Defendant
"committed bank fraud, forgery, embezzlement, identity theft,
extortion, and stealing (theft)."  (D.I. 9, 10.)

Sections 1 and 2 of the Sherman Act. (D.I. 43, 44.) Plaintiff filed a Motion To Amend the Complaint subsequent to Defendant's filing its Motion For Summary Judgment. (D.I. 46.) Plaintiff opposes the Motion and responds that because he proceeds pro se, he has had difficulty in his discovery efforts. He contends that he opened and owned B&R, is its only president, is the only legal officer of B&R, and the only signatory on the B&R account.

## II. STANDARD OF REVIEW

The Court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).

When determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is

correct." <u>Horowitz v. Federal Kemper Life Assurance Co.</u>, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" <u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

The Court is troubled by the fact that the allegations in the Complaint differ considerably from Plaintiff's testimony of what he considers his claims are against Defendant. Plaintiff concedes this is not a discrimination case and testified that portions of the allegations in the Complaint are untrue. Indeed, it is clear from his deposition testimony that his claim against Defendant lies under the Sherman Act. Defendant conducted discovery with this in mind even though Plaintiff did not amend his Complaint.

As will be discussed, Plaintiff did not seek leave to amend until after Defendant filed its Motion For Summary Judgment. Nonetheless, the Court will consider the claims Plaintiff raised

during his deposition, given the fact that he proceeds pro se, and the issues were explored through discovery.

As to the issues as alleged in the Complaint, there are no genuine issues of material fact. Nothing before the Court indicates that Defendant discriminated against Plaintiff on June 13, 2006. Therefore, as to the claims as alleged in the Complaint, the Court will grant Defendant's Motion For Summary Judgment.

## A. Standing

Defendant argues that Plaintiff lacks standing to seek relief and, therefore, it is entitled to summary judgment as a matter of law. It notes that the Complaint does not indicate under which statute Plaintiff seeks relief, but the civil cover sheet references Titles 12, 15, and 18 of the United States Code for bank fraud, embezzlement, extortion, and antitrust; specifically 18 U.S.C. §§ 2315, 1951, and 642-654. Defendant argues that these criminal statutes do not provide for civil causes of action. Defendant further argues that Plaintiff has no standing as he seeks compensation for damages for claims to third parties B&R and Allstaff and any claims for said companies must be asserted in their names.

Plaintiff refutes Defendant's position noting that he seeks relief under Titles 12, 15 and 18; not 12 and 18. He argues that J. Boyd may have purchased all the shares of B&R stock, but

10

Plaintiff is the president of B&R, it was not in good corporate standing for the duration of Defendant's violations and this caused B&R to revert to a sole proprietorship making Plaintiff the owner, since he is the president and the individual who "opened" B&R. (Id.) He also posits that B&R and Allstaff lost their corporate standing because he did not pay the their fees or file proper paperwork and each reverted to "a sole proprietary." Plaintiff contends that as an officer of B&R and Allstaff, he has personal responsibility for the entities.

## 1. Criminal Statutes

The civil cover sheet makes specific reference to statutes pertaining to embezzlement, theft, misuse of public funds, racketeering, and stolen property, and makes mention of Titles 12 and 15, but does not identify specific statutes under those Titles.[8] Statutes under Title 18, Crimes and Criminal Procedure include: 18 U.S.C. § 642[9], 18 U.S.C. §643[10], 18 U.S.C. § 644[11],

---

[8]Title 12, Banks and Banking, and Title 15, Commerce and Trade.

[9]Chapter 31-Embezzlement and Theft, Section 642 - Tools and materials for counterfeiting purposes.

[10]Chapter 31-Embezzlement and Theft, Section 643 - Accounting generally for public money.

[11]Chapter 31-Embezzlement and Theft, Section 644 - Banker receiving unauthorized deposit of public money.

18 U.S.C. § 645[12], 18 U.S.C. § 646[13], 18 U.S.C. § 647[14], 18 U.S.C.
§ 648[15], 18 U.S.C. § 649[16], 18 U.S.C. § 650[17], 18 U.S.C. § 651[18], 18
U.S.C. § 652[19], 18 U.S.C. § 653[20], 18 U.S.C. § 654[21], 18 U.S.C. §
1951[22], and 18 U.S.C. § 2315[23].  Plaintiff's civil claims raised
pursuant to Title 18 fail.

A private individual may bring suit under a federal statute

---

[12]Chapter 31- Embezzlement and Theft, Section 645 - Court
officers generally.

[13]Chapter 31- Embezzlement and Theft, Section 646 - Court
officers depositing registry moneys.

[14]Chapter 31- Embezzlement and Theft, Section 647 -
Receiving loan from court officer.

[15]Chapter 31- Embezzlement and Theft, Section 648 -
Custodians, generally, misusing public funds.

[16]Chapter 31- Embezzlement and Theft, Section 649 -
Custodians failing to deposit moneys; persons affected.

[17]Chapter 31- Embezzlement and Theft, Section 650 -
Depositaries failing to safeguard deposits.

[18]Chapter 31- Embezzlement and Theft, Section 651 -
Disbursing officer falsely certifying full payment.

[19]Chapter 31- Embezzlement and Theft, Section 652 -
Disbursing officer paying lesser in lieu of lawful amount.

[20]Chapter 31- Embezzlement and Theft, Section 653 -
Disbursing officer misusing public funds.

[21]Chapter 31- Embezzlement and Theft, Section 654 - Officer
or employee of United States converting property of another.

[22]Chapter 95-Racketeering, Section 1951 - Interference with
commerce by threats or violence.

[23]Chapter 113-Stolen Property, Section 2315 - Sale or
receipt of stolen goods, securities, moneys, or fraudulent State
tax stamps.

only when Congress specifically intended to create a private

right of action.  Hill v. Didio, 191 F. App'x 13, (2d Cir. 2006)

(citations omitted).  The sections under Title 18 wherein

Plaintiff seeks relief are criminal statutes and do not provide,

explicitly or implicitly, private civil causes of action.  See

Hill v. Didio, 191 F. App'x at 14 (nothing in the language or

structure of 18 U.S.C. § 645 suggests that Congress intended to

create a private right of action); Fisher v. Conseco Fin. Co.,

Inc., No. 3:07cv266/RV/MD, 2007 WL 3012881, at *3 (N.D. Fla. Oct.

12, 2007) (there is no private civil right of action under 18

U.S.C. § 642); Waris v. Frick, Civil Action No. 06-5189, 2007 WL

954108, at *5 (E.D. Pa. Mar. 28, 2007) (string citation of cases

for the proposition that there is no express or implied private

right of action under 18 U.S.C. § 1951); Piorkowski v. Parziale,

No. 3:02CV00963, 2003 WL 21037353, at *8 (D. Conn. May 7, 2003)

(no private cause of action under 18 U.S.C. § 2315); Waldron v.

Pierre, 995 F. Supp. 935 (N.D. Ill. 1998)(there is no express or

implied private cause of action in 18 U.S.C. § 654).  To the

extent Plaintiff asserts civil claims under any of the foregoing

statutes, they fail as a matter of law.

## 2.  Corporations

Plaintiff seeks compensation for alleged harm to B&R and

Allstaff, both Delaware corporations.  As discussed, Plaintiff is

no longer the owner of B&R having sold all his shares in the

corporation on January 1, 1997. He testified that when he sold his shares in B&R he thought that B&R was done, and the clients were J. Boyd's. Once it was sold, Plaintiff was no longer employed by B&R.

"The 'core component'" of the requirement that a litigant have standing to invoke the authority of a federal court "is an essential and unchanging part of the case-or-controversy requirement of Article III." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006)(citations omitted). "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751 (1984). Also, "a plaintiff must demonstrate standing separately for each form of relief sought." DaimlerChrysler Corp., 537 U.S. at 352 (citations omitted).

Here, the alleged injuries occurred not to Plaintiff, but to B&R and Allstaff. Plaintiff contends that he is the president of B&R and Allstaff, but failed to provide supporting evidence. Instead, the evidence of record indicates that J. Boyd is the President of B&R. (D.I. 47, ex. 2.) Additionally, J. Boyd, as President of B&R prepared a certificate of dissolution for B&R on October 29, 2005. (Id.) Moreover, even if Plaintiff is the only corporate officer of B&R and Allstaff, he has no standing to represent their claims. Plaintiff, a non-lawyer, may not appear

14

on behalf of, or represent, Allstaff or B&R. See Van De Berg v. C.I.R., 175 F. App'x 539, 541 (3d Cir. 2006).

Plaintiff further argues that because B&R and Allstaff lost their corporate status, again with no supporting evidence, the entities are his personal responsibility. This position appears to be an attempt to establish third-party standing. The Third Circuit determines the appropriateness of third-party standing with a three part test. Nasir v. Morgan, 350 F.3d 366, 376 (3d Cir. 2003) (citations omitted). "To successfully assert third-party standing: (1) the plaintiff must suffer injury; (2) the plaintiff and the third party must have a 'close relationship'; and (3) the third party must face some obstacles that prevent it from pursuing its own claims." Id.

As discussed time and time again, Plaintiff sold his shares in B&R. Additionally, B&R was dissolved as a corporation on October 29, 2005. While Plaintiff may have had a close relationship with B&R and Allstaff, the injuries as alleged by Plaintiff, were to B&R and Allstaff. Moreover, the record fails to support a finding that B&R and Allstaff faced an obstacle that prevented them from pursuing their own claims.

Finally, Plaintiff cannot prevail under his theory that B&R and Allstaff evolved into sole proprietorships by reason on non-payment of fees and failure to file forms. Delaware law provides that if a corporation fails to pay franchise taxes assessed

against it for one year, then "the charter of the corporation
shall be void, and all powers conferred by law upon the
corporation are declared inoperative...." 8 Del. C. § 510 (1983
Repl. Vol.).  The existence of all Delaware corporations,
"whether they expire by their own limitations or are otherwise
dissolved," is continued for three years from such expiration or
dissolution "or for such longer period as the Court of Chancery
shall in its discretion direct. . . ."  Id. at § 278.  "[I]n
Delaware it has long been the law that a Delaware corporation is
not dead for all purposes following forfeiture of its charter.
Frederic G. Kraph & Son, Inc. v. Corson, 243 A.2d 713, 714-15
(Del. 1968.) (citations omitted).  Indeed, 8 Del. C. § 312,
provides for a method of reinstating corporate charters which
have been forfeited.  Id. at 715.

    Plaintiff has no personal standing or third party standing
to raise claims on behalf of B&R and Allstaff.  Morever, as a
non-lawyer, he may not appear on behalf of, or represent them.
For the above reasons, the Court will grant Defendants' Motion
For Summary Judgment as Plaintiff has no standing to seek damages
for injuries to B&R and Allstaff.[24]

---

[24]The Court will not address the Motion For Summary Judgment
on the Sherman Act claims except to note that, as a matter of
law, Plaintiff cannot prove Defendant violated the Act.  Section
1 of the Sherman Act, 15 U.S.C. § 1, provides: "[e]very contract,
combination in the form of trust or otherwise, or conspiracy, in
restraint of trade or commerce among the several states . . . is
declared to be illegal."  15 U.S.C. § 1.  Section 1 requires:
(1) concerted action by Defendant; (2) that produced

16

## B. Amendment

Plaintiff filed a combined Motion For Reconsideration of the denial of his request for counsel and a Motion To Amend the Complaint. (D.I. 46.)  Defendant argues that Plaintiff's Motion is untimely, amendment is futile, and Plaintiff should not be allowed to amend.  (D.I. 48.)

Futility of amendment occurs when the complaint, as amended, does not state a claim upon which relief can be granted.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  Because Plaintiff raised new issues during his

___

anticompetitive effects within the relevant product and geographic markets; (3) the concerted action was illegal; and (4) Plaintiff was injured as a proximate result of the concerted action.  Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 442 (3d Cir. 1997).  There is no evidence of record that Defendant engaged in a conspiracy as is required under the act. At the most Plaintiff hypothesized that "there had to be some kind of an agreement."  Moreover, any alleged injury occurred to B&R and Allstaff, not to Plaintiff.

Section 2 of the Sherman Act makes it unlawful to monopolize, attempt to monopolize, or conspire to monopolize, interstate or international commerce.  Section 2 requires that (1) Defendant engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.  Schuylkill Energy Resources v. Pennsylvania Power & Light Co., 113 F.3d 405, 412-13 (3d Cir. 1997).  Liability under § 2 requires "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."  United States v. Grinnell Corp., 384 U.S. 563, 570-71 (1966); Schuylkill, 113 F.3d at 412-13.  The record does not support a finding that the temporary employment construction and industrial client market as a whole was harmed by Defendant's alleged acts or that Defendant had motive or intent to monopolize the relevant temporary employment construction and industrial client market.

17

deposition, and Defendant addressed those issues in its Motion
For Summary Judgment, the Court has considered Plaintiff's
proposed amendments as if Plaintiff had actually amended the
Complaint.  As discussed, the claims fail as a matter of law.
Hence, amendment is futile.  Additionally, the discovery and
dispositive motions deadlines have passed.  Allowing Plaintiff to
amend at this late date to change the entire theory of his case
would be prejudicial to Defendant.  For the above reasons,  the
Court will deny Plaintiff's Motion To Amend.[25]  (D.I. 46.)  The
Court will deny as moot the Motion For Reconsideration of denial
of request for counsel.  (D.I. 46.)

## IV.  CONCLUSION

Based upon the foregoing, the Court will grant Defendant's
Motion For Summary Judgment, will deny Plaintiff's Motion To
Amend, and will deny as moot the remaining pending Motions.  An
appropriate Order will be entered.

---

[25]Also pending are several Motions To Compel filed by
Plaintiff.  Two of the Motions are directed to Defendant.  The
Court has reviewed Defendant's responses and finds that it
adequately responded to Plaintiff's discovery requests.  One of
the Motions is directed to the accounting firm of Nannas, Haines
and Schiaveo, Inc.  It responded to Plaintiff's subpoena, but
advised Plaintiff there would be a fee for copying the
information.  (D.I. 32, ex.)  Another Motion is directed to
Tempay, Inc., who did not respond to Plaintiff's subpoena.  The
subpoena, however, was served in derogation of Fed. R. Civ. P.
45(c)(3)(A)(ii).